172114 Francis H. Woodward v. United States Good morning Mr. Single. Good morning your honor. May I reserve one minute for rebuttal please? Yes you may. Thank you. May it please the court, Bruce Single representing Frank Woodward. Your honor, since this case began when my client, Mr. Woodward, was indicted on July 27, 1990, believe it or not that's 23 years ago tomorrow to the day. And when one reviews the course of honest services law and the evolution of honest services law during the 23 years I've had the privilege of representing Mr. Woodward, it is evident that there has been a dramatic shrinking of the scope of that law, most recently in the McDonnell decision by the Supreme Court. And our position is that the two counts remaining out of the 28 on which Mr. Woodward was originally charged are now rendered invalid as a result of fundamental errors in the trial created by the McDonnell decision. Those fundamental errors take two forms. One is the sufficiency of the evidence and the second is on the instructions given, both of which are deficient under the newly refined standard imposed by McDonnell. So in terms of the sufficiency of the evidence, it is our position, your honor, that the conduct for which Mr. Woodward was convicted no longer constitutes the theft of honest services as redefined under McDonnell. And the beginning of that analysis is the two-pronged mechanism which McDonnell sets out for determining what an official act is. And that two-step process is that first you have to identify a particular matter, cause, controversy that is within the jurisdiction of the public official. And secondly, you have to show particular actions or decisions he took or he made with respect to those causes or concerns. In evaluating the evidence in the Woodward trial, it falls short on a number of grounds. First of all, I'll deal very quickly with the type of evidence which I think clearly is no longer an issue under McDonnell. There was a great deal of emphasis on the greater access that Mr. Sawyer, the lobbyist for John Hancock, had to Mr. Woodward as a result of the gratuities allegedly, all the meetings he had with him, and generalities of that sort. That's the evidence? There was evidence to that effect. What was the instruction? The instruction didn't reference access at all, did it? The instruction did not reference access at all, Your Honor. The instructions did not emphasize access. It emphasized an intent in receiving the gratuities to be influenced in the performance of official duties, but not any requirement of actually performing official acts within the parameters of McDonnell. But Judge Woodlock pointed out in his opinion, denying quorum no verse, pointed out several official acts that he felt the evidence reasonably related to Woodward's conduct. They were bills that were introduced into the legislature and either passed by the committee that Woodward co-chaired or bottled up by that committee. He did, Your Honor, and respectfully, we believe the district judge abused his discretion in arriving at that conclusion. And I say that for a number of reasons. Where the evidence that the district judge pointed to in support of that conclusion falls far short of the evidence that Woodward made a decision or took action with respect to those particular bills. I don't think there's any question that bills themselves constitute a subject matter or concern within the first stage of the mechanism. It's the second step, though, where the problem lies, because look at the evidence that we're talking about here. The evidence was that as the co-chair of the insurance committee, Woodward carried bills in the legislature. McDonald doesn't address that issue, though, does he? I thought McDonald makes it clear that access, showing access alone is not enough. McDonald does not say that an official act cannot be the act that one does as the chairman of a committee in doing those things that would next the bill. That's correct, Your Honor. So it's not a big problem for you on quorum no verse? I don't think it is, Your Honor, because again, I'm focusing on the... Well, we can only rule for you if we extended McDonald. I'm sorry? We can only rule for you if we extended McDonald from the case of access to the case of carrying legislation. Right, and what I'm suggesting is that a fair reading of McDonald requires great rigor and precision in evidence that Woodward took action or made decisions with respect to particular identified matters, causes, or concern. And where the evidence... I thought some courts have accepted the stream of benefits idea post-McDonald. The stream of benefits idea concept may have some vitality in the wake of McDonald, but only to this extent, Your Honor. The actions of the legislator would still have to be tethered to the gratuities received, and you'd have to show some specificity and precision in terms of what actions were engaged in in the future. They showed the lunches and the like for him carrying legislation as the head of the committee. There was no evidence, Your Honor, of any action that Mr. Woodward took in carrying legislation. There were generalized descriptions of what happened in the nature of carrying legislation. The problem is, when it got to the specifics of any bills, there were two problems. Number one is, there was an assumption piled on assumption, piled on inference, that we assume if Woodward was the chair of the committee, that he must have done A, B, and C with respect to carrying the bill. That's a sufficiency point. That's not a McDonald point. Well, I think it's a combination of the two, Your Honor, because McDonald requires that kind of specificity and precision in terms of the action of the legislature, and we don't have it. It's very generalized here. I'm sorry. No, but it not only is an inferential point that the fact finder has got to have some room to make some reasonable inferences, but it seems to me that your argument completely overlooks or extinguishes the difference between quorum novus review and direct review. If this were direct review of Woodward's conviction, some of these arguments might have some persuasive power, might, but on quorum novus review, we have a much more rigorous standard, don't we? Quorum novus is described, including in decisions of Your Honor, as an extraordinary remedy, and there's no question that it is designed to be such. I do believe, however, that in meeting the standard of fundamental error, if one can show that in the wake of a U.S. Supreme Court decision that comes after the trial, the evidence on which the defender was convicted no longer is criminal, that that does rise to the level of fundamental error that warrants that extraordinary remedy. Yeah, but as Judge Barron pointed out, McDonnell doesn't say that the acts described in Judge Woodlock's most recent rescript was not criminal. You can make an argument that an extension of McDonnell might lead to that result, but you can't say that McDonnell doesn't deal with the passage of legislation or what it means to carry a bill through the legislature or how that relates to the Hobbs Act at all. Those would certainly relate to meet the standard of the first prong, Your Honor, of describing a cause or concern or question within the jurisdiction of Mr. Woodward as a legislator. The evidence, however, is remarkable in how generalized and amorphous it is rather than demonstrating specific actions or decisions on the part of Mr. Woodward. On the instructions, I'd like to emphasize one point we did not make in the brief, Your Honor, and that is that the description of what an official act is in the context of the mail front statute came only in the description of the state gratuity statute requiring that gratuity be received for or because of an official act. This is not a requirement and was not described as a requirement. Counselor, your time is up. If you did not make it in your brief, I don't know how you're going to make it now. I suggest you file a 28-J letter and try it that way. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Sonia Ralston for the United States. As this Court said in George, the writ of coram nobis lies at the far end of the continuum, ranging from direct appeal to initial and successive collateral attacks. It requires an error of the most fundamental character, and that, quote, must denote something more than an error simpliciter, close quote. As my opposing colleague seems to concede at this point, that requires a showing of insufficiency, that the act that the defendant committed no longer constitutes criminal activity. We would agree that if that could be shown, that would satisfy the standard, but the evidence here was more than sufficient, as the district court pointed out in its opinion. Instructional error is not enough, and that's, I think, what he's conceded here at oral argument. The instructions, in any event, were sufficient. Now you seem to be just applying the same sufficiency standard that you would do on direct. If the evidence, if there was no evidence in the record demonstrating that the defendant committed an act that remains criminal. So don't we have to start with that part remains criminal, just under McDonald? Yes. Yes, right. Before you get to sufficiency, we just have to, what does McDonald mark off as the kind of things that are or are not criminal, and does McDonald tell us very much about whether this type of thing is or is not? That's right, Your Honor, and it doesn't. McDonald has nothing to say about what happened in this case. This case was a bribery case about the enactment of legislation, about the defendant's votes, about his actions in the legislature, and the arguments to the extreme of benefits idea, which this court has reaffirmed in the wake of McDonald and the Tavares case. And he keeps talking about specificity, that there's specificity required, that we had to identify the one particular thing that got bought by this bribe. And that's not how bribery law works. That rule would be simply absurd. It would be easy to avoid, and no one would ever be convicted of bribery again, but our government would be sold down the river. That's not what the law requires. That's not what McDonald requires. I think the district court's opinion clearly lays out all of the evidence here, and did a wonderful job of explaining why relief is not required, unless the court has further questions. What are the official acts that we are talking about here now, his actions as chairman of this committee? Yes, so there are several categories of official actions. One would be carrying bills through the legislature, which is not necessarily flowing from his responsibility of chairman, but something that he did with most of the insurance bills that were before the legislature during his time as chair. Testimony can be found on Joint Appendix 128 to 129. His votes, votes are clearly official acts. You look at the evidence on Joint Appendix 100 and 200 to show that on all but 31 out of 600 insurance bills, he voted the way John Hancock wanted him to vote. His role as a gatekeeper, as chair of the committee, that he had the power to keep bills off the floor. You can find evidence of that at Joint Appendix 116 to 125 and 253, and his role in blocking the non-smokers bill time and time again, which was a particular concern to his benefactor. You can find evidence of that at Joint Appendix 130 to 132. The record here was replete with official acts that still qualify under McDonnell, and those were the things the government was arguing in this case. If you look at the closing argument pages 934, 935, 937, 943, those are the things the government is hammering on to get this conviction, and the government didn't argue access. McDonnell just puts access off the road, and it doesn't even say it's irrelevant. It just says it alone is not enough, so you have to have access going towards something else. But the Joint Appendix here at 771 and 776, there's discussion about whether the government is going to argue access to the jury, and the district court says, I don't think that's their theory, and the government says, no, that's not our theory. We're not going to argue that. So even before the jury instructions came out, that was off the table. That wasn't the theory of conviction. So this has nothing to do with McDonnell. It's very unlike that case. Do you have a view about the collateral consequences part of the district court's ruling? Sure. So the district court, I don't think they are holding one way or the other. It just said, I'm not going to deny relief on this basis, and I think that's sufficient. You don't have to get to that to deny the relief here for the same reasons the district court didn't, both because of the fundamental error and the interest of justice point. This court has never decided, and George has specifically reserved the question about whether these state pensions can qualify, and it's not necessary to decide here. So again, it would be an advisory opinion, but I think the key issues that are unresolved in this record are factual questions about whether the contributions were refunded and how much that was, and so with the marginal difference between how much of an annuity that would buy at the time that it was refunded versus what the monthly pension is, and those facts are just undeveloped. The defendant bears the burden. He hasn't carried that burden. There's no evidence in the record that would carry that burden, and on the redressability point, he hasn't shown one way or the other that it necessarily would be automatically reinstated. The opinion that he cites, the Scully opinion, is about an appeal of someone who's on the verge of getting kicked out of the program, who hasn't yet been kicked out. There are no cases that I'm aware of, and he hasn't cited any, about somebody who's been kicked out and You should find the district court. Thank you. Your Honor, my sister neglects the fact that the type of descriptions and evidence of carrying bills were that bills were reported favorably out of the committee between 1985 and 1990. Joint Appendix 134 to 136 gives a flavor for the amorphous and generalized type of evidence that is untied to any specific action that Woodward took in terms of making a decision or taking action on a particular question, matter, or concern. All of these actions The way I read the record, there were approximately 600 bills of interest to the life insurance industry, of which he only opposed 31. Well, that is a, I don't believe, respectfully, that's a fair reading, Your Honor, because we showed 31 specific instances with bill numbers, bill dates, bill information, that that was not the case. The government showed no specifics, and all of their evidence was outside the statute of limitations. No specific actions by Woodward were shown after July 27, 1990. Thank you. Thank you.